# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Aron Joseph Freeland,**
**Petitioner Below, Petitioner**

**FILED**

April 5, 2013
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.)   No. 11-0126** (Monongalia County 07-C-237)

**David Ballard, Warden, Mt. Olive Correctional Complex,**
**Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioner Aron Joseph Freeland, by Scott A. Shough, his attorney, appeals the circuit court's order, entered December 17, 2010, dismissing his petition for a writ of habeas corpus. The respondent warden, by Laura Young, his attorney, filed a summary response to which petitioner replied *pro se*.[1]

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

On September 5, 2003, petitioner was indicted on two counts of second degree sexual assault involving two different victims on two different days. On October 1, 2004, petitioner entered into a plea agreement with the State in which he agreed to plead guilty to one count of second degree sexual assault in exchange for the State's promise to dismiss the second count. Petitioner would then be sentenced to a term of ten to twenty-five years in prison. The circuit court accepted the plea agreement but did not immediately sentence petitioner.

On February 8, 2005, petitioner filed a motion to withdraw the guilty plea arguing that he had insufficient time to consider the plea agreement and breach of the plea agreement. The circuit court granted the motion.[2] A jury trial was held in April of 2005, following which petitioner was convicted on both counts of the indictment. On May 18, 2005, petitioner was sentenced to two

---

[1] On June 22, 2012, this Court granted petitioner's counsel's motion for leave to file petitioner's pro se reply.

[2] Petitioner's previous counsel had withdrawn from the case. The new trial counsel represented petitioner in his motion to withdraw the guilty pleas and in subsequent proceedings.

1

consecutive sentences of ten to twenty-five years in prison. Petitioner's subsequent appeal was refused by this Court on February 16, 2006.

On June 6, 2005, petitioner filed a motion for reconsideration of sentence. The circuit court denied the motion. When petitioner appealed, this Court refused his petition on October 11, 2007.

Subsequently, petitioner filed a petition for a writ of habeas corpus. Counsel was appointed, and an amended petition was filed on June 9, 2009.[3] The circuit court noted that while petitioner raised forty-four grounds of relief, only eight of those grounds warranted discussion.[4] In a sixteen page order, the circuit court addressed those grounds and explained why the petition did not merit a hearing. Petitioner appealed the circuit court's order dismissing his petition.

On April 15, 2011, Petitioner's counsel filed an *Anders* brief. *See Anders v. California*, 386 U.S. 738 (1967). Counsel subsequently moved this Court for leave to file affidavits sworn by petitioner in support of his appeal. The Court granted the motion. Once the respondent warden filed a summary response, counsel moved for leave to file petitioner's *pro se* reply. This Court granted the motion.

STANDARD OF REVIEW

We review the circuit court's order dismissing a habeas petition under the following standard:

> In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review.

Syl. Pt. 1, *Mathena v. Haines,* 219 W.Va. 417, 633 S.E.2d 771 (2006).

DISCUSSION

---

[3] The respondent warden filed an answer on March 15, 2010.

[4] The eight grounds were as follows: (1) constitutional errors in evidentiary rulings; (2) prejudicial joinder of charges/denial of motion to sever; (3) ineffective assistance of counsel; (4) prejudicial statements by prosecutor; (5) more severe sentence than expected/excessive sentence; (6) sufficiency of evidence; (7) mistaken advice of counsel as to sentencing; and (8) irregularities in arrest.

In the *Anders* brief, counsel notes that petitioner would assert ten assignments of error[5] and states his conclusion that "the petitioner's arguments for appeal are without merit." In the summary response, the respondent warden argues that the circuit court did not err in summarily dismissing petitioner's habeas petition.

In his *pro* se reply, petitioner makes arguments based upon two instances where he alleges trial counsel was ineffective. In West Virginia, claims of ineffective assistance of counsel are governed by the two-pronged test established in *Strickland v. Washington,* 466 U.S. 668 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *See* Syl. Pt. 5, *State v. Miller,* 194 W.Va. 3, 459 S.E.2d 114 (1995). Petitioner argues that his conviction on at least one of the counts of second degree sexual assault should be reversed because trial counsel was ineffective in not calling a witness. Petitioner further argues that counsel was ineffective by advising him to admit responsibility for the offenses in connection with his motion for reconsideration of sentence. The circuit court noted petitioner's expectation that the witness counsel did not call would have testified that the first victim reported that no coercion or force had been used. In resolving this and all other claims of ineffective assistance, the circuit court found it was clear that counsel was not ineffective. The circuit court also considered petitioner's claim that petitioner admitted responsibility for the offenses only in the belief that he would receive an alternative or concurrent sentence if he admitted guilt. The circuit court found the claim to be without merit noting that "[a]lthough the Court did not reduce Petitioner's sentence, offering remorse and accepting responsibility was Petitioner's only option for possibly getting the statutory sentences run concurrently."

After careful consideration, this Court finds that the two instances petitioner raises do not meet the *Strickland/Miller* standard for showing ineffective assistance of counsel. First, petitioner had only an expectation of what the witness would have testified to, and even if petitioner's expectation was correct, the jury might not have believed the witness in light of the other evidence including the victim's trial testimony. Second, it was not was not ineffective assistance to advise that petitioner admit responsibility in connection with his motion for reconsideration; other than petitioner's own assertions, there is no evidence that counsel advised him to lie.

This Court concludes that the circuit court did not abuse its discretion in dismissing the petition. We hereby adopt and incorporate the circuit court's well-reasoned findings and

---

[5] Petitioner's assignments of error are the same as the eight grounds of relief the circuit court found warranted discussion, plus failure to hold an evidentiary hearing and failure to strike the respondent warden's answer because it was filed late. However, an evidentiary hearing is not always required. *See* W.Va. Code 53-4A-7(a); Syl. Pt. 1, *Perdue v. Coiner*, 156 W.Va. 467, 194 S.E.2d 657 (1973). In addition, deciding a case on its merits is a desirable legal objective. *See Toler v. Shelton*, 157 W.Va. 778, 204 S.E.2d 85 (1974). Therefore, after careful consideration, this Court concludes that the two issues regarding the circuit court's conduct of the habeas proceeding lack merit. As to the other eight assignments of error, this Court incorporates the circuit court's order. *See* infra.

conclusions as to the assignments of error raised in this appeal. The Clerk is directed to attach a copy of the circuit court's order to this memorandum decision.[6]

For the foregoing reasons, we find no error in the decision of the Circuit Court of Monongalia County and affirm its order dismissing petitioner's petition for a writ of habeas corpus.

Affirmed.

**ISSUED:**   April 5, 2013

**CONCURRED IN BY:**

Chief Justice Brent D. Benjamin
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

---

[6] Certain names have been redacted. *See State ex rel. West Virginia Dept. of Human Services v. Cheryl M.*, 177 W.Va. 688, 689 n.1, 356 S.E.2d 181, 182 n.1 (1987).

## IN THE CIRCUIT COURT OF MONONGALIA COUNTY, WEST VIRGINIA
## DIVISION II

ARON JOSEPH FREELAND,

      Petitioner,

v.

                                    CASE NO: 07-C-237
                                    Judge Russell M. Clawges, Jr.

THOMAS MCBRIDE, Warden,
Mt. Olive Correctional Complex,

      Respondent.

## ORDER DISMISSING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS

This matter is before this Court upon the Amended Petition for Writ of Habeas Corpus, filed by Aron Joseph Freeland (hereinafter "Petitioner") on June 9, 2009. The Petitioner seeks relief from the convictions and sentences imposed upon him as a result of a criminal proceeding, styled State of West Virginia v. Aron Joseph Freeland, Felony Case No. 03-F-132, which took place in the Circuit Court of Monongalia County, Division II, before the Hon. Russell M. Clawges, Jr., Circuit Judge.

Following a three-day trial, ending on April 21, 2005, the Petitioner was convicted by a jury of his peers of two (2) counts of second degree sexual assault. The Petitioner was sentenced by the court to serve two consecutive terms in the West Virginia State Penitentiary of ten (10) to twenty-five (25) years each or a total sentence of twenty (20) to fifty (50) years.

Petitioner was initially represented by attorney Belinda Haynie; however, she was replaced by Edward Rollo on November 22, 2004. Attorney Rollo represented Petitioner during the trial and his appeal to the Supreme Court.

1

On May 17, 2005, the Court imposed the consecutive sentences. Petitioner timely filed his appeal with the West Virginia Supreme Court of Appeals on December 28, 2005. The grounds raised by Petitioner in the appeal were the abuse of discretion by the trial court in denying prejudicial joinder of both counts; error by the trial court in refusing alternative sentencing; error in refusing to suppress Petitioner's statement; and lack of evidence to support conviction. On February 16, 2006, the Petitioner's Petition for Appeal was refused by the West Virginia Supreme Court of Appeals.

At a hearing held April 10, 2006, on Petitioner's Motion to Reconsider the previously imposed sentence, Petitioner told the Court that he had lied during the trial and admitted that he had sexually assaulted the two victims. Petitioner claims he did so upon the mistaken advice of counsel and with the belief that he would receive alternative sentencing and/or a concurrent sentence for admitting his guilt.

The Prosecuting Attorney of Monongalia County, West Virginia, Marcia L. Ashdown, filed an answer on behalf of the Respondent on March 15, 2010. After reviewing the Petition, the Respondent's answer, the record, and all other pertinent documents in the file, this Court is of the opinion that the Petitioner is neither entitled to a hearing on his claims as asserted in the Petition, nor should he be given the relief requested.

In Petitioner's Petition for Writ of Habeas Corpus, he alleges forty-four (44) grounds on which he claims he is being held unlawfully. However, factual support is submitted for only eight (8) of those grounds: (1) constitutional errors in evidentiary rulings, (2) prejudicial joinder of charges/denial of motion to sever, (3) ineffective assistance of counsel, (4) prejudicial statements by prosecutor, (5) more severe sentence than expected/excessive sentence, (6) sufficiency of evidence, (7) mistaken advice of counsel as to sentencing, and (8) irregularities in arrest.

## DISCUSSION

Once the Petition and Answer are filed, the matter is fully before the Court for disposition. If the Court's review of the file indicates that there is a need for the submission of further evidence, then the Court must enter an order granting an evidentiary hearing. W. Va. Code § 53-4A-7(a). However, if the Court is satisfied that no evidentiary hearing is required, that the grounds have been waived, or otherwise fully adjudicated, it must enter an order with specific findings of fact and conclusions of law denying the relief requested. Id. "A habeas corpus proceeding is not a substitute for a writ of error and ordinary trial error not involving constitutional violations will not be reviewed." Syl. Pt. 4, State ex rel. McMannis v. Mohn, 163 W.Va. 129 (1979).

### Constitutional Errors in Evidentiary Rulings

A. Petitioner first maintains that he was subjected to an illegal traffic stop and that any information obtained from that stop should not have been allowed for further investigation or to build a photo array. Morgantown police officer Philip Scott investigated the report of the first sexual assault on April 4, 2003. The victim described her attacker as a white male, 20 to 25 years old, heavy set, blonde hair, wearing blue jeans, grey T-shirt, and a blue visor, and driving a small silver car. On April 12, 2003, while on patrol, Officer Scott spotted an individual matching this description, wearing the same clothing, and sitting on the hood of a silver Ford Contour. Officer Scott spotted him one block away from the victim's home. Officer Scott attempted to approach the man and ask his name, but before he could, the individual got into his car and began driving away. Officer Scott followed and stopped him on reasonable suspicion in order to determine his name, address, and social security number. Officer Scott did not ask him any questions and did not search

3

his vehicle. After his driver's license was returned, the individual went on his way. It turned out that the man Officer Scott stopped was the Petitioner and his photo was later identified by both victims as the person who assaulted them.

"Police officers may stop a vehicle to investigate if they have an articulable reasonable suspicion that the vehicle is subject to seizure or a person in the vehicle has committed, is committing, or is about to commit a crime." Syl. Pt. 1, State v. Stuart, 192 W.Va. 428 (1994) "When evaluating whether or not particular facts establish reasonable suspicion, one must examine the totality of the circumstances, which includes both the quantity and quality of the information known by the police." Syl. Pt. 2, Stuart. The Court applied the reasonable articulable suspicion standard to the circumstances and ruled that the information subsequently gained from this stop was admissible. When Officer Scott observed the Petitioner, he matched in every respect the description given by the first victim – physical attributes, clothing, and vehicle. That gave Officer Scott a reasonable, articulable suspicion that the individual was a possible suspect of the offense. In addition, the stop resulted only in obtaining identifying information.

B. On May 5, 2003, the investigating officer asked Petitioner to come to the police station to be questioned. Petitioner voluntarily complied, having his mother drive him to the station. While being questioned by the Morgantown police, Petitioner asked for his mother to be present and that request was denied. Petitioner claims that statements he made to investigating/arresting officers should not have been admitted, as his waiver of his Miranda rights was not voluntary.

Petitioner was given a neuropsychological evaluation. Dr. Martin Boone testified that Petitioner has an IQ of 79, that he reads at a sixth grade level, and that he has problems processing complex information. In addition, Petitioner asserts that he incurred a brain injury at the age of

4

twelve resulting in his comprehension skills being in the low average ranges. For these reasons, Petitioner argues that he should have been afforded those protections available to juveniles.

"A trial court's determination of whether a custodial interrogation environment exists for purposes of giving *Miranda* warnings to a suspect is based upon whether a reasonable person in the suspect's position would have considered his or her freedom of action curtailed to a degree associated with a formal arrest." Syl. Pt. 1, State v. Middleton, 220 W.Va. 89 (2006). *Miranda* rights are not triggered unless there is custody. State v. Farley, 192 W.Va. 247 (1994); State v. George, 185 W.Va. 539. "The factors to be considered by the trial court in making a determination of whether a custodial interrogation environment exists, while not all-inclusive, include: the location and length of questioning; the nature of the questioning as it relates to the suspected offense; the number of police officers present; the use or absence of force or physical restraint by the police officers; the suspect's verbal and nonverbal responses to the police officers; and the length of time between the questioning and formal arrest." Syl. Pt. 2, Middleton.

The trial court held pre-trial hearings on this issue and found that Petitioner's statements to police were voluntary and admissible. Dr. Martin Boone, witness for the Petitioner, and Dr. Thomas Adamski, witness for the State, both testified. Dr. Boone's opinion was that Mr. Freeland did not have the capacity to understand that he was waiving his Miranda rights. This opinion was contradicted by Dr. Adamski. The court found that the totality of the circumstances indicated that the Miranda warning was properly given and that the Petitioner had the capacity to understand and waive his rights. Importantly, the Court also concluded that Petitioner was not subjected to a custodial interrogation, making the administration of Miranda rights unnecessary. Therefore, Petitioner's statements were admissible at trial.

5

C. The Court is of the opinion that no constitutional errors were committed by the trial court in its evidentiary rulings. Admissibility of evidence is in the discretion of the trial court. Admissibility of evidence decisions made by the trial judge are ordinary trial error, not a constitutional defect, and are not cognizable in a habeas corpus proceeding. Therefore, the Court cannot sustain the Petition on the grounds of constitutional errors in evidentiary rulings.

### Prejudicial Joinder of Charges/Denial of Motion to Sever

"A defendant is not entitled to relief from prejudicial joinder pursuant to Rule 14 of the West Virginia Rules of Criminal Procedures when evidence of each of the crimes charged would be admissible in a separate trial for the other." Syl. Pt. 2, State v. Milburn, 204 W.Va. 203 (1998). "Even where joinder or consolidation of offenses is proper under the West Virginia Rules of Criminal Procedure, the trial court may order separate trials pursuant to Rule 14(a) on the ground that such joinder or consolidation is prejudicial. The decision to grant a motion for severance pursuant to W. Va. R.Crim. P. 14(a) is a matter within the sound discretion of the trial court." Syl. Pt. 3, State v. Hatfield, 181 W. Va. 106 (1988).

Petitioner argues that counts one and two of the indictment were subject to permissive, not mandatory joinder. Both Attorney Haynie and Attorney Rollo moved for relief from prejudicial joinder of the two charges. However, at the last pre-trial motion hearing prior to trial, Petitioner was not able to answer whether or not he wished to testify in his own defense on either or both charges. He could not state with certainty what his strategy would be. The court denied his motion to sever the charges and have separate trials. Petitioner contends that only after hearing the State's evidence and the respective victim's testimony would he be able to determine whether to exercise his constitutional right to speak or remain silent. Petitioner argues that he was unduly prejudiced by

6

being forced to defend himself against both counts of the indictment in the same trial when he may have wanted to testify about some charges but not others. Petitioner further maintains that he was forced to choose between his constitutional right to testify and his right not to testify.

The Respondent argues that had the counts of the indictment been tried separately, the evidence pertaining to the other would have been presented in each trial as WVRE 404(b) evidence. Counsel for Petitioner agreed during the pretrial hearing that WVRE 404(b) evidence from one count could be introduced in the trial on the other count.

Petitioner was unable to state prior to trial that he planned to testify to one of the charges and not to the other. Therefore, joinder of the charges was in the discretion of the trial court. The Court finds that this ground is without merit.

### Ineffective Assistance of Counsel

"[I]n the practice of criminal law it is not always possible for a lawyer to investigate every avenue suggested to him by his client. A lawyer must use his own skill and judgment to determine what evidence is relevant and what facts will materially aid his client in demonstrating innocence." Carter v. Bordenkircher, 159 W.Va. 717, 722 (1976).

"In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Syl. Pt. 5, State v. Miller, 194 W.Va. 3 (1995).

7

"In deciding ineffective of assistance claims, a court need not address both prongs of the conjunctive standard of Strickland v. Washington [citations omitted], and State v. Miller [citations omitted], but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test." Syl. Pt. 5, State ex rel. Daniel v. Legursky, 195 W.Va. 316, (1995).

"In reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue." Syl. Pt. 6, State v. Miller.

Petitioner's claim of ineffective assistance of counsel is based upon six allegations. First, Petitioner asserts that trial counsel's pre-trial conduct amounted to ineffective assistance of counsel. Petitioner maintains that he relied on his trial counsel to develop the record and call witnesses to support that the two victims were willing to participate in sexual relations with the Petitioner for a price. More specifically, Petitioner submits that his trial counsel did not conduct an adequate investigation of the case. Trial counsel did not retain the services of a new investigator, instead relying on the work done by an investigator hired by Petitioner's former counsel. Petitioner argues that a more thorough investigation could have lead to evidence that would have challenged the credibility of the victims.

Petitioner claims that he only met with trial counsel twice prior to the commencement of trial on April 19, 2005. Petitioner claims that trial counsel did not do an appropriate job of explaining the strengths and weaknesses of his and the State's cases. Also, Petitioner asserts that his family was

8

not made a part of the trial preparation.

Second, Petitioner states that trial counsel failed to acquire and review the grand jury minutes relating to the return of the indictment. Petitioner submits that this failure prevented Petitioner from challenging the composition of the grand jury and prevented the determination of any contradictory testimony on the part of the investigating officer.

Third, Petitioner contends that trial counsel should have requested DNA testing by an independent laboratory to determine the accuracy and veracity of the West Virginia State Police lab findings.

Fourth, Petitioner provided trial counsel with the names of women whom he wanted called as witnesses to testify as to his character and manner of dealing with women. This testimony would have been offered to establish that committing sexual assault would have been contrary to his normal behavior.

Fifth, Petitioner submits that trial counsel failed to properly call Dr. Shultz as a witness at trial. Petitioner expected Dr. Shultz to testify that                had stated that no coercion or force was used during the sexual contact.

Sixth, Petitioner claims that his trial counsel refused to strike a juror who had prior dealings with trial counsel.

Trial counsel was not Petitioner's first counsel in this matter. As indicated above, the Petitioner was initially represented by Belinda Haynie. Ms. Haynie had completely and thoroughly investigated the case, independently and through an investigator. The case was set for trial and the parties were ready to go to trial when Petitioner entered his guilty plea that he subsequently withdrew, leading to the withdrawal of Ms. Haynie and the appointment of trial counsel, Mr. Rollo.

9

Trial counsel had the benefit of Ms. Haynie's prior work. No additional investigation was necessary, as the case was ready for trial.

Contrary to Petitioner's allegations, trial counsel was provided a copy of the Grand Jury transcript on April 15, 2005. Petitioner's allegation that trial counsel was ineffective for failing to request independent DNA testing is disingenuous. The Court is perplexed as to why Petitioner would request independent DNA testing when he never contended that he did not have sex with the victims. He admitted prior to trial to having sex with the victims, although he claimed it was consensual. The decision not to pursue additional DNA testing was not ineffective assistance. Trial counsel's decision not to call witnesses as to Petitioner's character and manner of dealing with women was a reasonable tactical decision. Petitioner's character was not placed into evidence by the State. If trial counsel had called these witnesses, this would have opened the door for the State to bring in evidence of the contrary, including a sexual assault committed by Petitioner while he was a juvenile. During individual voir dire, Juror Thomas Elliott indicated that he was previously involved in a case where trial counsel was appointed guardian ad litem for Mr. Elliott's son. Mr. Elliott indicated that trial counsel was averse to Mr. Elliott's interest in that previous matter; however, that would not affect his ability to be an impartial juror. Mr. Elliott stated that he would not be inclined to lean one way or the other as far as weighing the evidence. He stated that he was starting with a "blank slate." Trial counsel's choice not to strike him and use the peremptory strike for another potential juror was a strategy decision and Petitioner has not proven bias on the part of Mr. Elliott. See Smith v. Comm. Of Correction, 116 Conn.App. 383, 975 A.2d 751 (2009); Owen v. State, 986 So.2d 534 (Fla. 2008).

Upon a thorough review of the record, it is clear to the Court that the assistance of

10

Petitioner's counsel was not ineffective. Petitioner has not demonstrated that but for trial counsel's unprofessional errors the result of the trial would have been different.

### Prejudicial Statements by Prosecutor

Petitioner claims that the prosecutor committed misconduct by making improper and inflammatory comments about him during closing argument. Petitioner contends that during closing argument the Prosecutor referred to the Petitioner as a liar six times in six consecutive sentences. Petitioner submits that this prejudiced him and instilled in the minds of the jury that he was a person who should not be believed.

"A judgment of conviction will not be set aside because of improper remarks made by a prosecuting attorney to a jury which do not clearly prejudice the accused or result in a manifest injustice." Syl. Pt. 5, State v. Sugg, 193 W.Va. 388 (1995). "Four factors are taken into account in determining whether improper prosecutorial comment is so damaging as to require reversal: (1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; and (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters." Syl. Pt. 6, Id.

During the State's closing rebuttal, the Prosecuting Attorney briefly referenced Petitioner's testimony where he admitted he had not initially told the police the truth during questioning on May 5, 2003. The Prosecutor simply referred to specific testimony of the Petitioner where he admitted to lying to police and argued that he also lied during parts of his testimony during trial. The Prosecutor did not use the word "liar" but rather reminded the jury of lies that Petitioner conceded to and evidence admitted during trial that pointed toward other statements the Petitioner was

11

untruthful about.

.The remarks by the Prosecutor were neither inflammatory nor inappropriate. "The test is whether the remarks 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Id. at 406. The evidence supporting the guilt of the Petitioner was more than sufficient. The Prosecutor's comments did not result in manifest injustice, and therefore, alone cannot justify reversal of the verdict. The Court finds that this ground is without merit.

## More Severe Sentence than Expected/Excessive Sentence

Petitioner complains that the Court enhanced his sentence because he elected to go to trial rather than enter a guilty plea. The Court finds this claim completely unfounded. Petitioner originally entered a binding guilty plea to second degree sexual assault as charged in Count One of the indictment. In exchange for this plea, the State agreed to move to dismiss Count Two of the indictment. This plea would have required the Court to sentence the Petitioner to the statutory sentence of 10 to 25 years in the West Virginia State Penitentiary. However, prior to sentencing, Petitioner chose to withdraw from this plea and proceed to trial on all charges. The record reflects that the Petitioner was specifically advised by the Trial Court that if he withdrew his guilty plea and went to trial that he ran the risk of being convicted of three (3) separate sexual assaults[1] involving three (3) separate victims and that if he were convicted of multiple sexual assaults, he was exposed to consecutive sentences.

At trial Petitioner was convicted of two counts of second degree sexual assault of two

---

[1] At that time there were three (3) charges pending. After the withdrawal of the guilty plea and prior to trial, one of the victims elected not to proceed and that charge was dropped.

12

different victims. Petitioner received the statutory sentences of 10 to 25 years for each crime, with the sentences to run consecutively, or a total term of 20 to 50 years. Petitioner did not receive a different or longer sentence for the same crime for going to trial, rather than pleading guilty. The only difference was that he was convicted of committing the same crime to two different victims instead of pleading to committing the crime one time. Otherwise it was the same sentence, times two. Sentencing is within the sound discretion of the Court. "When a defendant has been convicted of two separate crimes, before sentence is pronounced for either, the trial court may, in its discretion, provide that the sentences run concurrently, and unless it does so provide, the sentences will run consecutively." Syl. Pt.3, Keith v. Leverette, 163 W.Va. 98, 254 S.E.2d 700 (1979); Syl. Pt. 3, State v. Allen, 208 W.Va. 144, 539 S.E.2d 87 (1999).

After considering all the information and testimony presented on behalf of the Petitioner and the State at the pre-trial motion hearings and sentencing hearing, the Court made a sentencing decision supported by the evidence and within the statutory parameters. The Court finds this claim to be without merit.

### Sufficiency of the Evidence

"A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. . . [A] jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt." Syl. Pt. 3, State v. Guthrie, 194 W.Va. 657 (1995). It is claimed by the Petitioner that the jury lacked sufficient evidence with which to make a finding of his guilt. Specifically, the Petitioner alleges that there were serious inconsistencies in the testimony of the victims during trial from the statements they gave immediately following the alleged assaults.

13

Both victims and the Petitioner testified at trial as to their versions of what happened. Both victims were subject to cross examination with regard to inconsistencies in their statements. After reviewing all the evidence presented, the jury chose to convict the Petitioner on both counts of second degree sexual assault. It took the jury only 29 minutes to convict the Petitioner on both counts. The record clearly indicates that direct testimony from the victims provided a sufficient basis from which the jury could conclude the Petitioner was guilty.

Again, this is a factual argument rather than an allegation of a constitutional violation. Therefore, The Court concludes that the Petitioner's claim of insufficiency of evidence is without merit.

### Mistaken Advice of Counsel as to Sentencing

Petitioner contends that upon mistaken advice of counsel he made a motion for reconsideration of his sentence. During a hearing on April 10, 2006, Petitioner testified that he had lied during trial and that the victims had testified truthfully that he had sexually assaulted them. Petitioner claims he only made this statement with the belief that he would receive an alternative or concurrent sentence if he admitted guilt.

Petitioner testified during the sentence reduction hearing that he had caused the Court a lot of inconvenience, that he would like to accept responsibility for his actions, and that he had a sex problem and wanted to seek help for it. He stated that being in jail was not the lifestyle that he wanted to continue living and that he wanted to return home to his loving family. Petitioner's counsel argued that Petitioner is a defacto juvenile because of his significant general cognitive disabilities. He urged the Court to send Petitioner to Anthony Center for six months to two years and then place him on probation for as long as allowed. In the alternative, he requested the Court

14

to consider running his sentences concurrently.

Although the Court did not reduce Petitioner's sentence, offering remorse and accepting responsibility was Petitioner's only option for possibly getting the statutory sentences run concurrently. The Court finds this claim without merit.

## Failure of Counsel to Consult with Petitioner Prior to Taking an Appeal

Petitioner claims that his trial counsel did not consult with him prior to filing his direct appeal to the West Virginia Supreme Court of Appeals and that trial counsel did not raise issues that the Petitioner wished to raise. However, Petitioner did not set forth any additional argument or details regarding what issues were not raised in the appeal.

## Irregularities in Arrest

Petitioner contends that on May 5, 2003, when he presented to the police station for questioning, the police had enough information and probable cause to arrest him before he was interviewed. Petitioner argues that he gave statements in violation of the prompt presentment rule. However, Detective Paul Mezzanotte testified that the investigating officers did not conclude until after Petitioner's interview that they had enough information to arrest him. Prior to the interview Petitioner was told that he was not under arrest and that he was free to leave anytime. After the interview, Detective Mezzanotte consulted with Sergeant Scott and determined that based on Petitioner's admissions that there was probable cause to substantiate two warrants for his arrest. Petitioner was then arrested and taken to Magistrate Court. The issue is not when the officer had enough information (probable cause) to arrest Petitioner, it is when the officer did in fact arrest Petitioner. The record is clear that Petitioner was not arrested until after he gave his statements to the officer. "An officer making an arrest under a warrant issued upon a complaint ..., shall take the

15

arrested person without unnecessary delay before a magistrate of the county where the arrest is made." W.Va.Code § 62-1-5(a)(1). The Court concludes that the Petitioner's claim of violation of the prompt presentment rule is without merit. Furthermore, the Court notes that prompt presentment is a statutory, not a constitutional requirement. Thus, the claim, even if well founded, is not cognizable.

## CONCLUSION

As explained above, none of the grounds that the Petitioner raises in his Petition for Writ of Habeas Corpus entitle him to the relief requested. Therefore, it is ADJUDGED, ORDERED, and DECREED that the Petition be, and hereby is, DENIED.

The Circuit Clerk of Monongalia County is directed to provide a copy of this Order to the Petitioner; his counsel, Scott Shough; and the Prosecuting Attorney of Monongalia County.

Enter this ___17+___ day of December 2010

Russell M. Clawges, Jr., Chief Judge
17th Judicial Circuit, Division II.

STATE OF WEST VIRGINIA SS:

I, Jean Friend, Clerk of the Circuit Court and Family Court of Monongalia County State aforesaid do hereby certify that the attached Order is a true copy of the original Order made and entered by said Court.

Circuit Clerk

16

# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

State of West Virginia, ex rel.,
Mr. Aron Joseph Freeland.,
    Defendant Below/Petitioner,

vs.

    Supreme Court of Appeals No._____
    Underlying:
    Monongalia County Circuit No: 07-C-237

State of West Virginia, as,
Mr. David Ballard, Warden,
    Plaintiff Below/Respondent.

## CERTIFICATE OF SERVICE

I, the undersigned Petitioner, appearing pro se, do attest that I have caused

to be served a True and Exact Copy of the foregoing Petitioner's: Notice of Intent to

Appeal, by placing same in the United States Mail, First-Class, Pre-Paid on this

7th day of JANUARY ,201 . Parties served include:

1)    Honorable Jean Friend
    Circuit Clerk of Monongalia County
    Monongalia County Courthouse
    243 High Street - Room 110
    Morgantown, W.Va. 26505

2)    Honorable Marcia Ashdown
    Prosecutor of Monongalia County
    Monongalia County Courthouse
    243 High Street - 3rd Floor
    Morgantown, W.Va. 26505

Respectfully Submitted,

*Aron Joseph Freeland*

Mr. Aron Jopseph Freeland,
Petitioner/pro se.